8          UNITED STATES DISTRICT COURT
9          WESTERN DISTRICT OF MISSOURI
10
11
12  THE UNITED STATES OF AMERICA,        )
13                                       )
14              Plaintiff,               )      No.: 2:18-cv-04133
15                                       )
16              v.                       )
17                                       )      CIVIL COMPLAINT
18  MFA Incorporated,                    )
19  and MFA Enterprises, Incorporated    )
20                                       )
21              Defendants.              )
22  _____ )

23

24          The United States of America, by authority of the Attorney General and through the

25  undersigned attorneys, acting at the request of the Administrator of the United States

26  Environmental Protection Agency ("EPA"), files this complaint seeking injunctive relief and

27  civil penalties and alleges as follows:

28                          NATURE OF THIS ACTION

29          1.      This is a civil action brought pursuant to Section 113(b)(2) of the Clean Air Act

30  ("the Act"), 42 U.S.C. § 7413(b)(2), against MFA Inc. and MFA Enterprises, Inc. (collectively,

31  the "Defendants") for their violations of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7).

32                          JURISDICTION AND VENUE

33          2.      This Court has jurisdiction over the subject matter of this action pursuant to

1   Section 113(b) of the Act, 42 U.S.C. § 7413(b), and pursuant to 28 U.S.C. §§ 1331, 1345, and

2   1355.  The Court has personal jurisdiction over the parties.

3        3.     Venue is proper in the Western District of Missouri pursuant to Section 113(b) of

4   the Act, 42 U.S.C. § 7413(b), and pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a) because

5   the Defendants are doing business within the district and a substantial part of the events giving

6   rise to the claims occurred within the district.

7        4.     Authority to bring a civil action is vested in the Attorney General of the United

8   States pursuant to Sections 113(b) and 305 of the Act, 42 U.S.C. §§ 7413(b) and 7605, and 28

9   U.S.C. §§ 516 and 519.

10   <u>NOTICE TO THE STATE OF MISSOURI</u>

11        5.     The United States has notified the State of Missouri of the commencement of this

12   action pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b).

13   <u>PARTIES</u>

14        6.     Plaintiff is the United States of America, acting at the request of the EPA, an

15   agency of the United States.

16        7.     Defendant MFA Inc. is a corporation organized and existing under the laws of the

17   State of Missouri and is doing business in this judicial district.

18        8.     MFA Inc. is an agricultural cooperative that owns and operates more than 140

19   retail farm supply centers throughout Missouri.

20        9.     Defendant MFA Enterprises, Inc. is a corporation organized and existing under

21   the laws of the State of Missouri and is doing business in this judicial district.

22        10.     MFA Enterprises, Inc. is a wholly-owned subsidiary of MFA Inc.

23        11.     Defendants are each a "person" within the meaning of Section 302(e) of the Act,

1    42 U.S.C. § 7602(e).

2          12.    Defendants own and/or operate the facilities that are the subject of this Complaint

3    within the meaning of Section 112(a)(9) of the CAA, 42 U.S.C. § 7412(a)(9),

4                        STATUTORY AND REGULATORY BACKGROUND

5          13.    The Clean Air Act establishes a regulatory scheme designed to protect and

6    enhance the quality of the nation's air so as to promote the public health and welfare and the

7    productive capacity of its population.  42 U.S.C. § 7401(b)(1).

8          14.    The Clean Air Act requires the Administrator of the EPA to, among other things,

9    promulgate programs and regulations intended to prevent accidental releases of regulated

10   substances and to minimize the consequences of any such releases that do occur.  42 U.S.C.

11   § 7412(r)(1).

12         15.    Sections 112(r)(3) and (7) of the Act, 42 U.S.C. §7412(r)(3) and (7), authorize the

13   Administrator of EPA to, among other things, promulgate a list of regulated substances with

14   threshold quantities and regulations applicable to the owner or operator of stationary sources at

15   which a regulated substance is present in more than a threshold quantity.  These regulations

16   address release prevention, detection, and correction requirements for regulated substances and

17   require a prompt emergency response to any such releases in order to protect human health and

18   the environment.

19         16.    EPA promulgated regulations to implement Section 112(r)(7), codified at 40

20   C.F.R. Part 68, that require owners and operators of stationary sources that have more than a

21   threshold quantity of a regulated substance in a process to develop and implement a risk

22   management program, to be described in a Risk Management Plan ("RMP").  The RMP is to be

23   submitted to EPA and includes, among other things, a management system, a hazard assessment,

1    and a prevention program.

2        17.    40 C.F.R. § 68.3 defines "owner or operator" as "any person who owns, leases,

3    operates, controls, or supervises a stationary source."

4        18.    Section 112(r)(2)(C) of the Act, 42 U.S.C. § 7412(r)(2)(C), and 40 C.F.R. § 68.3

5    define a "stationary source" as any buildings, structures, equipment, installations, or substance

6    emitting stationary activities which belong to the same industrial group, are located on one or

7    more contiguous properties, are under the control of the same person, and from which an

8    accidental release may occur.

9        19.    Section 112(r)(2)(A), 42 U.S.C. § 7412(r)(2)(A), defines "accidental release" as

10   an unanticipated emission of a regulated substance into the ambient air from a stationary source.

11       20.    40 C.F.R. § 68.3 defines "process" to mean "any activity involving a regulated

12   substance including any use, storage, manufacturing, handling, or on-site movement of such

13   substances, or any combination of these activities."  "Covered process" means "a process that

14   has a regulated hazardous substance present in more than a threshold quantity as determined

15   under [40 C.F.R.] § 68.115."

16       21.    The regulations at 40 C.F.R. Part 68 separate covered processes into three

17   categories, designated as Program 1, Program 2, and Program 3, and set forth specific

18   requirements for owners and operators of stationary sources with processes that fall within the

19   respective programs.

20       22.    Pursuant to 40 C.F.R. § 68.10(c), a covered process is subject to Program 2

21   requirements if it does not meet one or more of the Program 1 eligibility requirements set forth in

22   40 C.F.R. § 68.10(b) and the process is not subject to Program 3 requirements because it is not

23   listed in one of the specific North American Industry Classification System codes found in 40

1    C.F.R. § 68.10(d)(1) or is not subject to the United States Occupational Safety and Health

2    Administration (OSHA) process safety management standard set forth in 29 C.F.R. § 1910.119.

3            23.     Pursuant to 40 C.F.R. § 68.12(c), the owner or operator of a stationary source

4    with a process subject to Program 2 prevention requirements must undertake certain tasks,

5    including but not limited to:

6            a.    developing and implementing a management system, as provided in 40 C.F.R.

7                  § 68.15;

8            b.    conducting a hazard assessment to assess a worst-case release scenario, as

9                  provided in 40 C.F.R. §§ 68.20-68.42;

10           c.    implementing either the Program 2 prevention requirements provided in 40 C.F.R.

11                 §§ 68.48-68.60, including safety information, hazard reviews, operating

12                 procedures, training, maintenance, compliance audits, and incident investigations,

13                 or the Program 3 requirements provided in 40 C.F.R. §§ 68.65-68.87;

14           d.     developing and implementing an emergency response program as provided in 40

15                 C.F.R. §§ 68.90-68.95; and

16           e.    submitting as part of its RMP the data on prevention program elements for

17                 Program 2 processes as provided in 40 C.F.R. § 68.170.

18           24.     Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), the Administrator

19   may commence a civil action against any person that is the owner or operator of a covered

20   source to obtain civil penalties and a permanent or temporary injunction whenever such person

21   violated or is violating any requirement or prohibition of the Act, including the requirements of

22   Section 112(r)(7), 42 U.S.C. § 7412(r)(7), and its implementing regulations, including 40 C.F.R.

23   Part 68.

1    25.    Section 113(b) of the Act, 42 U.S.C. § 7413(b), as modified by the Debt

2    Collection Improvements Act of 1996, 31 U.S.C. § 3701, as implemented by the Civil Monetary

3    Penalties Inflation Rule, 40 C.F.R. Part 19, establishes maximum civil penalties for violations of

4    the CAA.  The maximum civil penalty per day per violation of the CAA is $37,500 for violations

5    occurring after January 12, 2009 and on or before November 2, 2015, and effective January 16,

6    2018, $97,229 per day per violation of the CAA for violations occurring after November 2, 2015.

7    42 U.S.C. § 7413(b) and 40 C.F.R. § 19.4.

8

9                                    GENERAL ALLEGATIONS

10    26.    Anhydrous ammonia is listed as an extremely hazardous substance pursuant to

11    Section 112(r)(3) of the Act, 42 U.S.C. § 7412(r)(3), and its implementing regulations, 40 C.F.R.

12    § 68.130.

13    27.    Anhydrous ammonia is a colorless, highly irritating gas with a sharp, suffocating

14    odor.  Symptoms of human exposure to anhydrous ammonia include burning of the eyes, nose

15    and throat after breathing even small amounts.  With higher doses, coughing or choking may

16    occur.  Exposure to high levels of anhydrous ammonia can cause death from a swollen throat or

17    from chemical burns to the lungs.

18    28.    For the purposes of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7), the

19    threshold quantity of anhydrous ammonia is listed at 10,000 pounds.  40 C.F.R. § 68.3.

20    29.    Anhydrous ammonia storage vessels involve a regulated substance in storage,

21    manufacturing, or handling, and constitute a covered "process" as defined by 40 C.F.R. § 68.3.

22    30.    The following facilities (collectively, "MFA facilities") are the subject of this

23    action.

a)  The Centralia facility or Facility One located at 22501 North March Road, Centralia, Missouri;

b)  The Rock Port facility or Facility Two located at 17287 W. Hwy 136, Rock Port, Missouri.

c)  The Pattonsburg Facility or Facility Three located at 18563 U.S. Hwy. 69, Pattonsburg, Missouri.

d)  The Hale facility or Facility Four located at 3049 J. Highway, Hale, Missouri.

e)  The Saint Joseph facility or Facility Five located at 2715 South Sixth Street, St. Joseph, Missouri.

f)  The Jefferson City facility or Facility Six located at 1009 Fourth Street, Jefferson City, Missouri

g)  The Rich Hill facility or Facility Seven located at 700 E. Walnut, Rich Hill, Missouri

h)  The New Cambria facility or Facility Eight located at 29400 Colony Ave., New Cambria, Missouri.

i)  The Martinsburg facility or Facility Nine located at 15778 Audrain Road 741, Martinsburg, Missouri.

31.     At all relevant times, MFA Inc. has been and continues to be the "owner and/or operator" within the meaning of Section 112(a)(9) of CAA of the Centralia (Facility One), Pattonsburg (Facility Three), Hale (Facility Four), Saint Joseph (Facility Five), Jefferson City (Facility Six), New Cambria (Facility Eight) and Martinsburg (Facility Nine) facilities mentioned in Paragraph 30.

32.     At all relevant times, MFA Enterprises, Inc. has owned, and continues to own, the Rock Port (Facility Two) and Rich Hill (Facility Seven) facilities mentioned in Paragraph 30.

33.     On information and belief, and subject to a reasonable opportunity for further investigation or discovery, at all relevant times, MFA Inc. has operated, and continues to operate the Rock Port (Facility Two) and Rich Hill (Facility Seven) facilities mentioned in Paragraph 30.

34.     The MFA facilities are "stationary sources" within the meaning of Section 112(r)(2)(C) of the Act, 42 U.S.C. § 7412(r)(2)(C).

35.     At each of the MFA facilities, at all relevant times, MFA Inc. handled, stored, and used, and continues to handle, store and use, anhydrous ammonia above the threshold quantity of 10,000 pounds at the MFA facilities.

Case 2:18-cv-04133-WJE   Document 1   Filed 07/02/18   Page 7 of 22

1      36.    The MFA facilities are subject to "Program 2" requirements within the meaning

2   of 40 C.F.R. §§ 68.10(c) and 68.12(c).

3      37.    The MFA facilities distribute anhydrous ammonia to farmers, who inject it into

4   the ground as fertilizer.  The facilities store large amounts of anhydrous ammonia in bulk tanks

5   and transfer it to nurse tanks.  As a result, employees, the surrounding public, and the

6   environment are at risk of exposure to this extremely hazardous substance if it is released.

7      38.    EPA examined records that MFA Inc. produced on October 31, 2014, in response

8   to an information request from EPA pursuant to Section 114 of the Act, 42 U.S.C. § 7414,

9   relating to compliance with the risk management program regulations at 40 C.F.R. Part 68

10  ("MFA Inc.'s Section 114 response").  In these records, MFA Inc. admits that it operates all of

11  the MFA Facilities and owns the Centralia (Facility One), Pattonsburg (Facility Three), Hale

12  (Facility Four), Saint Joseph (Facility Five), Jefferson City (Facility Six), New Cambria (Facility

13  Eight) and Martinsburg (Facility Nine) facilities.

14     39.    In its most recent Risk Management Plan submissions, MFA Enterprises Inc.

15  admits that it owns the Rock Port (Facility Two, submitted July 26, 2016) and Rich Hill (Facility

16  Seven, submitted September 9, 2013) facilities.

17     40.    EPA also conducted inspections at MFA facilities in Centralia, Jefferson City,

18  Rich Hill, New Cambria, and Martinsburg, Missouri.  As a result of its examination and

19  inspections, EPA identified numerous violations of the risk management program regulations

20  and numerous releases of anhydrous ammonia resulting in injuries.

21                    THE FACILITIES

22              Centralia, Missouri – Facility One

23      41.    On or about September 4, 2009, there was a release of anhydrous ammonia at the

1    Centralia facility.

2         42.    The release of anhydrous ammonia from the Centralia facility on or about

3    September 4, 2009 constituted an "accidental release" within the meaning of Section

4    112(r)(2)(A) of the Act.  42 U.S.C. § 7412(r)(2)(A).

5         43.    As a result of this release, at least one person was injured onsite.

6         44.    On September 19, 2012, EPA inspected the Centralia facility.  The inspector

7    noted, among other things, that MFA Inc. failed to possess accurate safety information pertaining

8    to equipment listed onsite; evaluate hazards; use proper saddles supporting bulk vessels that

9    comply with recognized and generally accepted good engineering practices; address in the

10   hazard review any steps used or needed to detect or monitor releases; resolve in a timely manner

11   corrective actions identified in the facility's hazard review; possess standard operating

12   procedures for temporary operations and for how to use valves; and possess accurate three-year

13   audits.

14        45.    On or about October 31, 2014, MFA Inc. submitted its response to EPA's

15   information requests pursuant to Section 114 of the Act. Among other things, MFA Inc.'s

16   answers revealed nurse tanks with improperly functioning gauges and a failure to report in the

17   RMP the accidental release referred to in Paragraph 41 above.  On April 27, 2015, EPA again

18   inspected the Centralia facility.  The inspector noted, among other things, that MFA Inc. failed to

19   possess standard operating procedures for normal daily start up or shut down processes and for

20   filling dual nurse tanks;  have up-to-date operating procedures that reference the emergency

21   equipment that the facility actually uses and clearly identify the procedure associated with the

22   equipment; describe the steps required to correct or avoid deviations in operating procedures; test

23   and replace pressure relief valves and underground piping; and write an accurate description of

1    its emergency response program.

2                    <u>Rock Port, Missouri – Facility Two</u>

3        46.    On or about April 14, 2010, there was a release of anhydrous ammonia at the

4    Rock Port facility.

5        47.    The release of anhydrous ammonia from the Rock Port facility on or about April

6    14, 2010 constituted an "accidental release" within the meaning of Section 112(r)(2)(A) of the

7    Act.  42 U.S.C. § 7412(r)(2)(A).

8        48.    As a result of this release, at least one person was injured onsite.

9        49.    On or about October 31, 2014, MFA Inc. responded to EPA's information

10   request.  Among other things, MFA Inc.'s answers revealed its failure to report the accidental

11   release within six months of its occurrence and to include any mention of the accidental release

12   that resulted in on-site injuries in the five year accident history section of the RMP submitted on

13   July 18, 2014.

14                   <u>Pattonsburg, Missouri – Facility Three</u>

15       50.    On or about May 6, 2010, there was a release of anhydrous ammonia at the

16   Pattonsburg facility.

17       51.    The release of anhydrous ammonia from the Pattonsburg facility on or about May

18   6, 2010 constituted an "accidental release" within the meaning of Section 112(r)(2)(A) of the

19   Act.  42 U.S.C. § 7412(r)(2)(A).

20       52.    As a result of this release, at least one person was injured onsite.

21       53.    Among other things, MFA Inc.'s Section 114 response revealed a failure to report

22   in the RMP an accidental release from a process that resulted in on-site injuries at the

23   Pattonsburg facility.

54.    On or about January 18, 2012, there was a release of anhydrous ammonia at the Hale facility.

55.    The release of anhydrous ammonia from the Hale facility on or about January 18, 2012 constituted an "accidental release" within the meaning of Section 112(r)(2)(A) of the Act. 42 U.S.C. § 7412(r)(2)(A).

56.    As a result of this release, at least one person was injured onsite.

57.    Among other things, MFA Inc.'s Section 114 response revealed a failure to report in the RMP an accidental release from a process that resulted in on-site injuries at the Hale facility.

St. Joseph, Missouri – Facility Five

58.    On or about March 24, 2014, there was a release of anhydrous ammonia at the St. Joseph facility.

59.    The release of anhydrous ammonia from the St. Joseph facility on or about March 24, 2014 constituted an "accidental release" within the meaning of Section 112(r)(2)(A) of the Act.  42 U.S.C. § 7412(r)(2)(A).

60.    As a result of this release, at least one person was injured onsite.

61.    Among other things, MFA Inc.'s Section 114 response revealed a failure to report in the RMP an accidental release from a process that resulted in on-site injuries at the St. Joseph facility.  Its response also revealed a failure to ensure that employees are trained to operate valves.

Jefferson City, Missouri – Facility Six

62.    On September 12, 2012, EPA inspected the Jefferson City facility.  The inspector

1 noted, among other things, that MFA Inc. failed to maintain adequate equipment specifications to

2 determine safe upper and lower flow limits; properly maintain bulk storage vessels in a way that

3 complied with recognized and generally accepted good engineering practices; and conduct a

4 compliance audit every three years.

5 <u>Rich Hill, Missouri – Facility Seven</u>

6 63. On September 25, 2012, EPA inspected the Rich Hill facility. The inspector

7 noted, among other things, that Defendants failed to include any consequences of deviation

8 within its standard operating procedures.

9 64. On April 1, 2015, EPA again inspected the Rich Hill facility. The inspector

10 noted, among other things, that Defendants failed to use proper equipment, including vehicle

11 barriers, a bulk tank saddle, nurse tank, and emergency water containers that complied with

12 recognized and generally accepted good engineering practices. The inspector also noted that

13 Defendants failed to recognize the hazard of underground piping in the facility hazard review;

14 possess standard operating procedures that contain accurate information on safety procedures;

15 replace pressure relief valves and hoses in compliance with industry standards; and accurately

16 describe the facility's emergency response and facility coordinator within its RMP.

17 <u>New Cambria, Missouri – Facility Eight</u>

18 65. On November 14-15, 2012, EPA inspected the New Cambria facility. The

19 inspector noted, among other things, that MFA Inc. failed to use proper equipment that complied

20 with recognized and generally accepted good engineering practices, including piping that would

21 trigger excess flow valves; recognize the hazard of a nearby highway in its hazard review;

22 identify safeguards including properly functioning excess flow valves in its hazard review;

23 identify any steps used or needed to detect or monitor releases in the hazard review; replace

1  pressure relief valves in compliance with industry standards; and improperly certified its three-

2  year audits.

3  <u>Martinsburg, Missouri – Facility Nine</u>

4  66.    On December 12, 2012, EPA inspected the Martinsburg facility.  The inspector

5  noted, among other things, that MFA Inc. failed to resolve in a timely manner corrective actions

6  identified in the facility's hazard review and develop a report of audit findings and document the

7  responses to the audit and deficiencies corrected.

8  67.    On April 28, 2015, EPA again inspected the Martinsburg facility.  The inspector

9  noted, among other things, that MFA Inc. again failed to properly address the findings of a

10  compliance audit.  EPA also noted that MFA Inc. failed to recognize the hazard of underground

11  piping; possess standard operating procedures for normal daily start up and shut down processes;

12  describe the steps required to correct or avoid deviations in operating procedures; replace

13  pressure relief valves, vapor hoses, and hydrostatic relief valves in compliance with industry

14  standards; and accurately describe the facility's emergency response in its RMP.

15  **FIRST CLAIM FOR RELIEF**
16  Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68
17  at the Centralia Facility (against MFA Inc.)

18  68.    Paragraphs 1 through 67 are incorporated herein by reference.

19  69.    MFA Inc. is subject to the requirements of Section 112(r) of the Clean Air Act, 42

20  U.S.C. § 7412(r), and the regulations at 40 C.F.R. Part 68, with respect to the Centralia facility.

21  70.     Beginning on April 7, 2010, MFA Inc. violated numerous federal CAA

22  requirements promulgated under Section 112 and codified at 40 C.F.R. Part 68 at the Centralia

23  facility, which violations are set forth in Exhibit 1, Table 1 attached to this Complaint and hereby

24  incorporated into this Paragraph.

25  71.    Each failure to comply with the requirements of 40 C.F.R. Part 68 constitutes a

1    violation of Section 112(r)(7) of the Act.

2        72.    On information and belief, and subject to a reasonable opportunity for further

3    investigation or discovery, Defendant's CAA violations at the Centralia facility continue or

4    continued during the time period provided in Exhibit 1, Table 1.

5        73.    MFA Inc. is liable for injunctive relief and the assessment of civil penalties in an

6    amount up to the level set forth at 40 C.F.R. § 19.4 per day for each violation of Section

7    112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7). The maximum civil penalty per day per violation of

8    the CAA is $37,500 for violations occurring after January 12, 2009 and on or before November

9    2, 2015, and effective January 16, 2018, $97,229 per day per violation of the CAA for violations

10   occurring after November 2, 2015.

11                              **SECOND CLAIM FOR RELIEF**
12           Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68
13                    at the Rock Port Facility (against MFA Inc. and MFA Enterprises, Inc.)

14       74.    Paragraphs 1 through 67 are incorporated herein by reference.

15       75.    Defendants are subject to the requirements of Section 112(r) of the Clean Air Act,

16   42 U.S.C. § 7412(r), and the regulations at 40 C.F.R. Part 68, with respect to the Rock Port

17   facility.

18       76.    Beginning on July 18, 2014, Defendants violated federal CAA requirements

19   promulgated under Section 112 and codified at 40 C.F.R. Part 68 at the Rock Port facility, which

20   violations are set forth in Exhibit 1, Table 2 attached to this Complaint and hereby incorporated

21   into this Paragraph.

22       77.    Each failure to comply with the requirements of 40 C.F.R. Part 68 constitutes a

23   violation of Section 112(r)(7) of the Act.

24       78.    Defendants are liable for injunctive relief and the assessment of civil penalties in

25   an amount up to the level set forth at 40 C.F.R. § 19.4 per day for each violation of Section

Case 2:18-cv-04133-WJE   Document 1   Filed 07/02/18   Page 14 of 22

1    112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7). The maximum civil penalty per day per violation of

2    the CAA is $37,500 for violations occurring after January 12, 2009 and on or before November

3    2, 2015, and effective January 16, 2018, $97,229 per day per violation of the CAA for violations

4    occurring after November 2, 2015.

5                                 **THIRD CLAIM FOR RELIEF**
6              Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68
7                            at the Pattonsburg Facility (against MFA Inc.)

8          79.    Paragraphs 1 through 67 are incorporated herein by reference.

9          80.    MFA Inc. is subject to the requirements of Section 112(r) of the Clean Air Act, 42

10   U.S.C. § 7412(r), and the regulations at 40 C.F.R. Part 68, with respect to the Pattonsburg

11   facility.

12         81.    Beginning on March 8, 2011, MFA Inc. violated a federal CAA requirement

13   promulgated under Section 112 and codified at 40 C.F.R. Part 68 at the Pattonsburg facility

14   which is set forth in Exhibit 1, Table 3 attached to this Complaint and hereby incorporated into

15   this Paragraph.

16         82.    MFA Inc.'s failure to comply with the requirements of 40 C.F.R. Part 68

17   constitutes a violation of Section 112(r)(7) of the Act.

18         83.    MFA Inc. is liable for injunctive relief and the assessment of civil penalties in an

19   amount up to the level set forth at 40 C.F.R. § 19.4 per day for each violation of Section

20   112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7).  The maximum civil penalty per day per violation of

21   the CAA is $37,500 for violations occurring after January 12, 2009 and on or before November

22   2, 2015, and effective January 16, 2018, $97,229 per day per violation of the CAA for violations

23   occurring after November 2, 2015.

**FOURTH CLAIM FOR RELIEF**
Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68
at the Hale Facility (against MFA Inc.)

84.     Paragraphs 1 through 67 are incorporated herein by reference.

85.     MFA Inc. is subject to the requirements of Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), and the regulations at 40 C.F.R. Part 68, with respect to the Hale facility.

86.     Beginning on March 19, 2012, MFA Inc. violated a federal CAA requirement promulgated under Section 112 and codified at 40 C.F.R. Part 68 at the Hale facility, which violation is set forth in Exhibit 1, Table 4 attached to this Complaint and hereby incorporated into this Paragraph.

87.     MFA. Inc.'s failure to comply with the requirements of 40 C.F.R. Part 68 constitutes a violation of Section 112(r)(7) of the Act.

88.     MFA Inc. is liable for injunctive relief and the assessment of civil penalties in an amount up to the level set forth at 40 C.F.R. § 19.4 per day for each violation of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7). The maximum civil penalty per day per violation of the CAA is $37,500 for violations occurring after January 12, 2009 and on or before November 2, 2015, and effective January 16, 2018, $97,229 per day per violation of the CAA for violations occurring after November 2, 2015.

**FIFTH CLAIM FOR RELIEF**
Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68
at the St. Joseph Facility (against MFA Inc.)

89.     Paragraphs 1 through 67 are incorporated herein by reference.

90.     MFA Inc. is subject to the requirements of Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), and the regulations at 40 C.F.R. Part 68, with respect to the St. Joseph facility.

91.     Beginning on March 24, 2014, MFA Inc. violated federal CAA requirements promulgated under Section 112 and codified at 40 C.F.R. Part 68 at the Saint Joseph facility,

1  which violations are set forth in Exhibit 1, Table 5 attached to this Complaint and hereby

2  incorporated into this Paragraph.

3      92.    Each of MFA. Inc.'s failures to comply with the requirements of 40 C.F.R. Part

4  68 constitutes a violation of Section 112(r)(7) of the Act.

5      93.    MFA Inc. is liable for injunctive relief and the assessment of civil penalties in an

6  amount up to the level set forth at 40 C.F.R. § 19.4 per day for each violation of Section

7  112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7).The maximum civil penalty per day per violation of

8  the CAA is $37,500 for violations occurring after January 12, 2009 and on or before November

9  2, 2015, and effective January 16, 2018, $97,229 per day per violation of the CAA for violations

10  occurring after November 2, 2015.

11                          **SIXTH CLAIM FOR RELIEF**
12        Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68
13                          at the Jefferson City Facility (against MFA Inc.)

14      94.    Paragraphs 1 through 67 are incorporated herein by reference.

15      95.    MFA Inc. is subject to the requirements of Section 112(r) of the Clean Air Act, 42

16  U.S.C. § 7412(r), and the regulations at 40 C.F.R. Part 68, with respect to the Jefferson City

17  facility.

18      96.    Beginning on June 26, 2011, MFA Inc. violated numerous federal CAA

19  requirements promulgated under Section 112 and codified at 40 C.F.R. Part 68 at the Jefferson

20  City facility, which violations are set forth in Exhibit 1, Table 6 attached to this Complaint and

21  hereby incorporated into this Paragraph.

22      97.    Each of MFA Inc.'s failures to comply with the requirements of 40 C.F.R. Part 68

23  constitutes a violation of Section 112(r)(7) of the Act.

24      98.    On information and belief, and subject to a reasonable opportunity for further

25  investigation or discovery, Defendant's CAA violations at the Jefferson City facility continue or

1  continued during the time period provided in Exhibit 1 Table 6.

2      99.    MFA Inc. is liable for injunctive relief and the assessment of civil penalties in an

3  amount up to the level set forth at 40 C.F.R. § 19.4 per day for each violation of Section

4  112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7).The maximum civil penalty per day per violation of

5  the CAA is $37,500 for violations occurring after January 12, 2009 and on or before November

6  2, 2015, and effective January 16, 2018, $97,229 per day per violation of the CAA for violations

7  occurring after November 2, 2015.

8              **SEVENTH CLAIM FOR RELIEF**
9      Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68
10          at the Rich Hill Facility (against MFA Inc. and MFA Enterprises, Inc.)

11     100.    Paragraphs 1 through 67 are incorporated herein by reference.

12     101.    Defendants are subject to the requirements of Section 112(r) of the Clean Air Act,

13  42 U.S.C. § 7412(r), and the regulations at 40 C.F.R. Part 68, with respect to the Rich Hill

14  facility.

15     102.    Beginning on July 28, 2011, Defendants violated numerous federal CAA

16  requirements promulgated under Section 112 and codified at 40 C.F.R. Part 68 at the Rich Hill

17  facility, which violations are set forth in Exhibit 1, Table 7 attached to this Complaint and hereby

18  incorporated into this Paragraph.

19     103.    Each of Defendants' failures to comply with the requirements of 40 C.F.R. Part

20  68 constitutes a violation of Section 112(r)(7) of the Act.

21     104.    On information and belief, and subject to a reasonable opportunity for further

22  investigation or discovery, Defendants' CAA violations at the Rich Hill facility continue or

23  continued during the time period provided in Exhibit 1, Table 7.

24     105.    Defendants are liable for injunctive relief and the assessment of civil penalties in

25  an amount up to the level set forth at 40 C.F.R. § 19.4 per day for each violation of Section

1     112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7). The maximum civil penalty per day per violation of

2     the CAA is $37,500 for violations occurring after January 12, 2009 and on or before November

3     2, 2015, and effective January 16, 2018, $97,229 per day per violation of the CAA for violations

4     occurring after November 2, 2015.

5     **EIGHTH CLAIM FOR RELIEF**
6     Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68
7     at the New Cambria Facility (against MFA Inc.)

8     106.     Paragraphs 1 through 67 are incorporated herein by reference.

9     107.     MFA Inc. is subject to the requirements of Section 112(r) of the Clean Air Act, 42

10     U.S.C. § 7412(r), and the regulations at 40 C.F.R. Part 68, with respect to the New Cambria

11     facility.

12     108.     Beginning on March 24, 2010, MFA Inc. violated numerous federal CAA

13     requirements promulgated under Section 112 and codified at 40 C.F.R. Part 68 at the New

14     Cambria facility, which violations are set forth in Exhibit 1, Table 8 attached to this Complaint

15     and hereby incorporated into this Paragraph.

16     109.     Each of MFA Inc.'s failures to comply with the requirements of 40 C.F.R. Part 68

17     constitutes a violation of Section 112(r)(7) of the Act.

18     110.     On information and belief, and subject to a reasonable opportunity for further

19     investigation or discovery, Defendant's CAA violations at the New Cambria facility continue or

20     continued during the time period provided in Exhibit 1, Table 8.

21     111.     MFA Inc. is liable for injunctive relief and the assessment of civil penalties in an

22     amount up to the level set forth at 40 C.F.R. § 19.4 per day for each violation of Section

23     112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7). The maximum civil penalty per day per violation of

24     the CAA is $37,500 for violations occurring after January 12, 2009 and on or before November

25     2, 2015, and effective January 16, 2018, $97,229 per day per violation of the CAA for violations

1    occurring after November 2, 2015.

**NINTH CLAIM FOR RELIEF**
Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68
at the Martinsburg Facility (against MFA Inc.)

5    112.    Paragraphs 1 through 67 are incorporated herein by reference.

6    113.    MFA Inc. is subject to the requirements of Section 112(r) of the Clean Air Act, 42

7    U.S.C. § 7412(r), and the regulations at 40 C.F.R. Part 68, with respect to the Martinsburg

8    facility.

9    114.    Beginning on or before May 31, 2010, MFA Inc. violated numerous federal CAA

10   requirements promulgated under Section 112 and codified at 40 C.F.R. Part 68 at the

11   Martinsburg facility, which violations are set forth in Exhibit 1, Table 9 attached to this

12   Complaint and hereby incorporated into this Paragraph.

13   115.    Each of MFA Inc.'s failures to comply with the requirements of 40 C.F.R. Part 68

14   constitutes a violation of Section 112(r)(7) of the Act.

15   116.    On information and belief, and subject to a reasonable opportunity for further

16   investigation or discovery, Defendant's CAA violations at the Martinsburg facility continue or

17   continued during the time period provided in Exhibit 1 Table 9.

18   117.    MFA Inc. is liable for injunctive relief and the assessment of civil penalties in an

19   amount up to the level set forth at 40 C.F.R. § 19.4 per day for each violation of Section

20   112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7). The maximum civil penalty per day, per violation,

21   for each violation of the CAA is $37,500 for violations occurring after January 12, 2009 and on

22   or before November 2, 2015, and effective January 16, 2018, $97,229 per day, per violation, for

23   each violation of the CAA for violations occurring after November 2, 2015.

PRAYER FOR RELIEF

2      WHEREFORE, Plaintiff, the United States of America, respectfully requests that this

3      Court:

4           A.      Order Defendants MFA Incorporated and MFA Enterprises, Incorporated to

5      immediately comply with the Clean Air Act statutory and regulatory requirements cited in this

6      Complaint, pursuant to Section 113(b) of the Act;

7           B.      Assess civil penalties against Defendants MFA Incorporated and MFA

8      Enterprises, Incorporated in an amount up to $37,500 per day, per violation, for each violation of

9      Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7) occurring on or before November 2, 2015,

10     and in an amount up to $97,229 for each violation occurring after November 2, 2015;

11          C.      Impose such injunctive relief on Defendants MFA Incorporated and MFA

12     Enterprises, Incorporated as may be appropriate to mitigate the effects of Defendants' violations,

13     and prevent any future violations;

14          D.      Award the United States its costs and expenses incurred in this action; and

15          E.      Grant such other relief and further relief as this Court may deem appropriate.


16                              Respectfully submitted,

17
18                              JEFFREY H. WOOD
19                              Acting Assistant Attorney General
20                              Environment and Natural Resources Division
21                              United States Department of Justice
22
23
24                              */s/ Peter Krzywicki*
25                              PETER KRZYWICKI, MI Bar # P75723
26                              JOHN BRODERICK, MA Bar # 688739
27                              Trial Attorneys
28                              Environmental Enforcement Section
29                              Environment and Natural Resources Division
30                              United States Department of Justice

| | |
|---|---|
| 1 | P.O. Box 7611, Ben Franklin Station |
| 2 | Washington, D.C. 20044-7611 |
| 3 | Tel.: (202) 305-4903 |
| 4 | Fax: (202) 514-0097 |
| 5 | Peter.Krzywicki@usdoj.gov |
| 6 | John.Broderick@usdoj.gov |
| 7 | |
| 8 | |
| 9 | TIMOTHY A. GARRISON |
| 10 | United States Attorney |
| 11 | Western District of Missouri |
| 12 | |
| 13 | CHARLES THOMAS, MO Bar # 28522 |
| 14 | Assistant United States Attorney |
| 15 | Western District of Missouri |
| 16 | United States Courthouse |
| 17 | 400 East 9th Street, Room 5510 |
| 18 | Kansas City, MO 64106 |
| 19 | (816) 426-3130 |
| 20 | Charles.Thomas@usdoj.gov |
| 21 | |
| 22 | |
| 23 | OF COUNSEL: |
| 24 | |
| 25 | HOWARD BUNCH |
| 26 | Senior Attorney |
| 27 | U.S. Environmental Protection Agency, Region 7 |
| 28 | 11201 Renner Boulevard |
| 29 | Lenexa, Kansas 66219 |
| 30 | |

JS 44 (Rev 09/10)

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI

## CIVIL COVER SHEET

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use <u>only</u> in the Western District of Missouri.

**The completed cover sheet must be saved as a pdf document and filed as an attachment to the Complaint or Notice of Removal.**

**Plaintiff(s):**

First Listed Plaintiff:
United States of America ;
**County of Residence:** Outside This District

**Defendant(s):**

First Listed Defendant:
MFA Incorporated ;
**County of Residence:** Boone County

Additional Defendants(s):
MFA Enterprises Incorporated ;

**County Where Claim For Relief Arose:** Boone County

**Plaintiff's Attorney(s):**

Peter Krzywicki ( United States of America)
Department of Justice
501 D Street NW
Washington, DC 20044
**Phone:** 202-305-4903
**Fax:** 202-616-6583
**Email:** Peter.Krzywicki@usdoj.gov

John Broderick ( United States of America)
Department of Justice
601 D Street NW
Washington, DC 20044
**Phone:** 202-305-0302
**Fax:** 202-616-6583
**Email:** John.Broderick@usdoj.gov

Charles Thomas ( United States of America)
Department of Justice
400 East 9th Street, Room 5510
Kansas City, Missouri 64106
**Phone:** (816) 426-3130
**Fax:**
**Email:** Charles.Thomas@usdoj.gov

**Defendant's Attorney(s):**

Jean Paul Bradshaw ( MFA Incorporated)
Lathrop Gage LLP
2345 Grand Blvd., Suite 2200
Kansas City, Missouri 64108
**Phone:** 816.460.5507
**Fax:** 816.292.2001
**Email:** jbradshaw@lathropgage.com

Jessica Merrigan ( MFA Enterprises Incorporated)
Jessica
2345 Grand Blvd., Suite 2200
Kansas City, Missouri 64108
**Phone:** 816.460.5706
**Fax:** 816.292.2001
**Email:** jmerrigan@lathropgage.com

Grant Harse ( MFA Enterprises Incorporated)
Lathrop Gage LLP
2345 Grand Blvd., Suite 2200
Kansas City, Missouri 64108
**Phone:** 816-460-5750
**Fax:** 816.292.2001
**Email:** gharse@lathropgage.com

**Basis of Jurisdiction:** 1. U.S. Government Plaintiff

**Citizenship of Principal Parties** (Diversity Cases Only)

**Plaintiff:** N/A

**Defendant:** N/A

**Origin:** 1. Original Proceeding

**Nature of Suit:** 893 Environmental Matters

**Cause of Action:** This civil action is brought pursuant to Section 113(b)(2) of the Clean Air Act, 42 U.S.C. § 7413(b)(2), against MFA Inc. and MFA Enterprises, Inc. for their violations of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7).

**Requested in Complaint**

**Class Action:** Not filed as a Class Action

**Monetary Demand (in Thousands):**

**Jury Demand:** No

**Related Cases:** Is NOT a refiling of a previously dismissed action

---

**Signature:** Peter Krzywicki

**Date:** 7/2/2018

If any of this information is incorrect, please close this window and go back to the Civil Cover Sheet Input form to make the correction and generate the updated JS44. Once corrected, print this form, sign and date it, and submit it with your new civil action.